**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| COASTAL SPECIALTY FOREST PRODUCTS, INC. d/b/a COASTAL FOREST PRODUCTS,<br>*Plaintiff,*<br>v.<br>UNITED STATES,<br>*Defendant.* | Court No. 26-04440 |

**COMPLAINT**

**INTRODUCTION**

1. The U.S. Department of Commerce's antidumping and countervailing duty orders on softwood lumber apply only to imports of *Canadian origin*. *Certain Softwood Lumber Products From Canada: Antidumping Duty Order and Partial Amended Final Determination*, 83 Fed. Reg. 350 (Dep't of Com. Jan. 3, 2018); *Certain Softwood Lumber Products From Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order,* 83 Fed. Reg. 347 (Dep't of Com. Jan. 3, 2018) (collectively, the *Orders*).

2. In Enforce and Protect Act (EAPA) case number 8199, however, U.S. Customs and Border Protection unilaterally applied the *Orders* to merchandise imported by plaintiff Coastal Specialty Forest Products, Inc., doing business as Coastal Forest Products (Coastal), that, under the applicable substantial-transformation test employed by Commerce, 19 C.F.R. § 351.225(j), was of *New Zealand* origin.

3. In doing so, Customs butchered Coastal's arguments, misunderstood the scope of the *Orders* and the law, and failed to consult with Commerce as would have been required prior to concluding that the merchandise at issue was subject to the *Orders*.

4. In short, the question in this case is whether the merchandise Coastal imported was covered by the *Orders* despite substantial processing in New Zealand—yet Customs utterly failed to address, let alone resolve, that question.

5. For these reasons and those that follow, Customs' decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. The Court should accordingly remand this matter to Customs for reconsideration.

## BACKGROUND

### I. The *Orders* Apply Only to Canadian Softwood Lumber and Make Clear that Kiln-Drying, Planing, and Sanding Lumber is Substantially Transformative

6. The *Orders* cover *Canadian* "softwood lumber, siding, flooring, and certain other coniferous wood (softwood lumber products)," including:

- Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether or not planed, whether or not sanded, or whether or not finger-jointed, of an actual thickness exceeding six millimeters.

- Coniferous wood siding, flooring, and other coniferous wood (other than moldings and dowel rods), including strips and friezes for parquet flooring, that is continuously shaped (including, but not limited to, tongued, grooved, rebated, chamfered, V-jointed, beaded, molded, rounded) along any of its edges, ends, or faces, whether or not planed, whether or not sanded, or whether or not end-jointed.

- Coniferous drilled and notched lumber and angle cut lumber.

- Coniferous lumber stacked on edge and fastened together with nails, whether or not with plywood sheathing.

- Components or parts of semi-finished or unassembled finished products made from subject merchandise that would otherwise meet the definition of the scope above.

*Orders*, 83 Fed. Reg. at 351; 83 Fed. Reg. at 349.

7. "Finished products are not covered by the scope of" the *Orders*, which are products that "contain, or are comprised of, subject merchandise and have undergone sufficient processing such that they can no longer be considered intermediate products, and such products can be readily

differentiated from merchandise subject to" the *Orders* "at the time of importation. Such differentiation may, for example, be shown through marks of special adaptation as a particular product. The following products are illustrative of the type of merchandise that is considered 'finished' for the purpose of this scope: I-joists; assembled pallets; cutting boards; assembled picture frames; garage doors." *Orders*, 83 Fed. Reg. at 351; 83 Fed. Reg. at 349.

8. When crafting the scope of antidumping and countervailing duty investigations (and later orders), Commerce includes specific products for which the petitioner has "requested relief and exclude[s] those products which may fall within the general scope definition, but for which petitioner does not seek relief." *Forged Steel Fluid End Blocks from the Federal Republic of Germany: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 85 Fed. Reg. 31,454 (Dep't of Com. May 26, 2020) and Scope Decision Memorandum at 2.

9. Further, "[a]side from the description of the merchandise subject to the scope of an order, an essential element in determining whether a product is covered by an order is the country of origin of the product at issue…. Commerce[] [uses its] longstanding 'substantial transformation' test … to determine the country of origin of a product or products. In particular, Commerce generally uses a substantial transformation analysis to determine whether a product's country of origin has changed as a result of processing that occurs in third countries before a product is imported into the United States." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49,472 (Dep't of Com. Aug. 13, 2020).

10. The Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (the Committee), which was the petitioner in the underlying antidumping and

countervailing duty proceedings (and the EAPA alleger here), explained to Commerce that "softwood lumber made in Canada from U.S.-origin logs" is "*unquestionably* within the scope of these investigations." Committee Response to Comments on Scope at 33 (Jan. 19, 2017) (Barcode 3537847-01) (emphasis added).

11. Later in the investigation, the Committee requested that Commerce include an exclusion for U.S. origin lumber that underwent processing in Canada, including kiln-drying, planing to create smooth to size boards, and/or sanding. Committee Additional Comments on Scope at 5-6 (Apr. 3, 2017) (Barcode 3559461-01).

12. Commerce accordingly excluded from the *Orders*' scope, among other things, "U.S.-origin lumber shipped to Canada for processing and imported into the United States if the processing occurring in Canada is limited to one or more of the following: (1) Kiln drying; (2) planing to create smooth-to-size board; or (3) sanding." *Orders*, 83 Fed. Reg. at 351; 83 Fed. Reg. at 349.

13. Thus, but for the exclusion that the Committee requested and Commerce provided, kiln-drying, planing, and sanding would have been sufficient to substantially-transform U.S.-origin lumber into Canadian lumber subject to the *Orders*. For the same reason, kiln-drying, planing, and sanding is sufficient to substantially transform raw Canadian lumber into a product of a third country not subject to the *Orders*.

## II. Coastal Imports Siding, Trim Boards, and Patterns that Were Substantially Transformed in New Zealand From Raw Canadian Lumber Through Kiln-Drying, Planing, Sanding, and More

14. Coastal is a leading wholesale distributor of premium building materials based in Bow, New Hampshire. It supplies a variety of finished products, such as siding, profiles, and trim,

to an extensive dealer network of retail lumberyards throughout New England, the New York metropolitan area, and the Carolinas.

15. In 2018, Coastal sought out additional suppliers of western red cedar products to diversify its supply chain. Coastal began working with Herman Pacific Limited (Hermpac), a New-Zealand-based company, to supply finished products for Coastal's private label ELITE brand.

16. The finished products that Hermpac made for Coastal's ELITE brand include siding, dimensional trim boards, and patterns.

17. To make these finished products, Hermpac imported raw western red cedar from Canada into New Zealand. Hermpac then, at a minimum, kiln-dried, planed, and sanded the Canadian raw lumber. Certain products were also edge-glued by Hermpac.

18. To perform all this processing, Hermpac used specialized machinery, proprietary algorithms for optimizing yields from low-grade timber, and many employees, all at significant expense.

19. Hermpac's processing, which manufactured a raw material into a finished, ready-to-use product, added significant value to the Canadian raw lumber.

20. Hermpac's processing also limited the end-use of the Canadian raw lumber. The raw Canadian input could have been used for a variety of purposes and was not dedicated to any particular end-use at the time it was imported into New Zealand. The finished products that Hermpac made, however, had specific and limited end-uses. Bevel siding and trim boards, for example, are used in construction projects for buildings' exteriors or interior accent walls.

21. Coastal, serving as the importer of record, imported the finished products manufactured by Hermpac, properly declared them as New Zealand-origin, and entered them as type 01 (*i.e.*, not subject to the *Orders*).

### III. Customs' Trade Remedy Law Enforcement Directorate (TRLED) Confirms These Facts at Verification Yet Issues an Evasion Determination that Overlooks Coastal's Evidence, Fails to Analyze Origin, and Erroneously Relies on Lacey Act Declarations

22. The Committee filed an EAPA allegation against Coastal based on meager evidence on June 13, 2025.

23. Customs initiated an EAPA investigation on July 1, 2025, then disclosed the existence of this investigation to Coastal on September 30, 2025, while at the same time imposing interim measures under 19 U.S.C. § 1517(e).

24. Both Hermpac and Coastal fully cooperated with Customs' investigation. Both companies filed extensive responses to Customs' requests for information, supplying over 6,000 pages of documents. Both companies also responded to Customs' supplemental requests for information. And Hermpac fully participated in Customs' exhaustive in-person verification proceeding.

25. During the verification proceeding, Customs found that Hermpac's books and records directly tied to its questionnaire responses and noted no discrepancies.

26. In short, both Coastal and Hermpac submitted exhaustive, timely, and accurate responses to Customs' requests for information that confirmed the nature and extent of Hermpac's processing in New Zealand.

27. Before the conclusion of the EAPA investigation, Coastal submitted a timely brief explaining why the finished products it imported from Hermpac were not subject to the *Orders*.

28. First, Coastal demonstrated in its brief that the *Orders* plainly provide that kiln-drying, planing, and sanding raw lumber (and more) is sufficiently substantially transformative to shift the country of origin of lumber for purposes of applying the scope of the *Orders*, as shown by the U.S.-origin lumber exclusion requested by the Committee during the investigation.

29. Second, Coastal explained that, if Customs found the scope to be unclear, it was required under 19 U.S.C. § 1517(b)(4) to refer the question to Commerce as Customs lacks the authority to interpret the *Orders*.

30. Third, Coastal explained that, even if Customs were to interpret the *Orders* (which it lacks the authority to do), a substantial-transformation analysis under the correct standard—that is, Commerce's test required by 19 C.F.R. § 351.225(j)—demonstrates that the raw Canadian lumber imported into New Zealand was substantially transformed by Hermpac in New Zealand, given the significant value added, significant manufacturing investment, nature and sophistication of processing, change in end-use, and change in physical characteristics.

31. On May 4, 2026, however, TRLED issued a decision finding "substantial evidence" that Coastal had evaded the *Orders*. *Notice of Determination as to Evasion, EAPA Consolidated Case No. 8199* (May 4, 2026) (Evasion Determination).

32. TRLED's Evasion Determination failed to engage with Coastal's arguments, evidence, and the applicable law. The Evasion Determination ignored Coastal's argument regarding kiln-drying, planing, and sanding being substantially transformative based on the plain language of the *Orders*' scope and exclusions. Additionally, the Evasion Determination failed to even consider a § 351.225(j) substantial-transformation analysis. It did not consider, for example, the evidence contained in Customs' own verification report demonstrating that Hermpac's processing added significant value and converted a raw material into a specific, limited end-use product.

33. Instead, the Evasion Determination simply pointed to the physical description of the goods in the *Orders* and stated that, because inputs of the products Coastal imported from New Zealand were from Canada and because the products exported from New Zealand were described

by the *Orders*' scope, they must therefore be subject to the *Orders*. But that is not how a scope works. *See, e.g.*, *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49,472 (Dep't of Com. Aug. 13, 2020); *Bell Supply Co. v. United States*, 393 F. Supp. 3d 1229, 1238 (Ct. Int'l Trade 2019); *Bell Supply Co. v. United States*, 348 F. Supp. 3d 1281, 1289 (Ct. Int'l Trade 2018); *Peer Bearing Co. v. United States*, 914 F. Supp. 2d 1343, 1351-52 (Ct. Int'l Trade 2013).

34. Furthermore, the Evasion Determination erroneously relied on Coastal's Lacey Act declarations as evidence that the country of origin of the products was Canada rather than New Zealand. But the Lacey Act requires importers to declare the country of *harvest* of a plant or plant product. The instructions on every Lacey Act declaration state in bold type that the country of harvest "**is NOT the country of manufacture/origin**."

## IV. On Administrative Review, Customs' Office of Regulations and Rulings Exacerbates TRLED's Mistakes, Misconstrues Coastal's Arguments, and Misunderstands Both the *Orders*' Scope and the Law

35. Coastal timely sought administrative review of the Evasion Determination before Customs' Office of Regulations and Rulings (R&R). 19 U.S.C. § 1517(f).

36. In its request for administrative review, Coastal reiterated the arguments that it made before TRLED.

37. In its appeal, Coastal reiterated that the Orders' scope only covers merchandise with a country-of-origin of Canada. The scope's exclusion of "U.S. origin lumber shipped to Canada for further processing," which would otherwise have been "*unquestionably* within the scope" of the investigation, was an acknowledgment by Commerce that processing steps such as kiln drying, planing, sanding, would be sufficient to substantially transform the country of origin of the lumber. Committee Response to Comments on Scope at 33 (Jan. 19, 2017) (Barcode 3537847-01)

(emphasis added). The plain language of the scope thereby expressed that further processing of otherwise covered Canadian lumber in a third country including kiln drying, planing, sanding, and more would definitively transform the lumber, change its country of origin, and remove it from the scope.

38. Coastal also reminded Customs that, under this Court's decisions, it is not enough to simply point to the *Orders*' scope when confronted with third-country processing; instead, Commerce must determine whether such processing effects a substantial transformation. *Bell Supply Co. v. United States*, 393 F. Supp. 3d 1229, 1238 (Ct. Int'l Trade 2019); *Bell Supply Co. v. United States*, 348 F. Supp. 3d 1281, 1289 (Ct. Int'l Trade 2018); *Peer Bearing Co. v. United States*, 914 F. Supp. 2d 1343, 1351-52 (Ct. Int'l Trade 2013). That is, the fact that both a downstream input and the upstream finished products "are within the scope of the order" is not enough to demonstrate "that a substantial transformation did not occur" in the third country thereby *removing* the product from the scope of otherwise applicable orders. *Peer Bearing*, 914 F. Supp. 2d at 1353.

39. Furthermore, Coastal noted that the Evasion Determination's reliance on Lacey Act declarations was plainly improper, given that, on their face, they evidence the country of harvest rather than the country of manufacture or origin.

40. On September 11, 2026, R&R affirmed the Evasion Determination, repeating many of TRLED's mistakes and introducing new ones. *Final Administrative Determination, EAPA Case No. 8199: Coastal Specialty Forest Products Inc.* (Sept. 11, 2026) (Final Determination).

41. R&R misconstrued Coastal's arguments as being addressed to the *Orders*' "finished-product" exclusion, even though Coastal never raised that exclusion. Final Determination at 15-16.

42. Like TRLED, R&R refused to refer the question of substantial-transformation to Commerce or engage in a substantial-transformation analysis as required by 19 C.F.R. § 351.225(j).

43. R&R instead misconstrued Coastal's arguments as focusing entirely on "customs marking"—even though Coastal cited 19 C.F.R. § 351.225(j) in making its substantial-transformation arguments and had never raised the issue of marking requirements. Final Determination at 16-17; *see, e.g.*, *id.* at 16 ("Therefore, whether or not the Canadian softwood lumber was substantially transformed in New Zealand for customs country of origin marking purposes is irrelevant.").

44. At no point did R&R consider any one of the 19 C.F.R. § 351.225(j) factors comprising *Commerce's* substantial transformation analysis used to determine whether a product further processed in a third country is still covered by an order's scope or otherwise explain why consideration of the § 351.225(j) factors was unnecessary, beyond repeatedly stating that the products that Coastal imported from New Zealand were described by the scope of the *Orders*. *See generally* Final Determination.

45. Like TRLED, R&R failed to consider the fact that the *Orders* themselves, together with petitioner's statements to Commerce in securing the U.S.-origin lumber exclusion, show that kiln-drying, planing, and sanding (and more) is sufficient to substantially transform raw lumber. R&R missed the point by simply stating in response that "the exclusion is expressly limited to U.S.-origin lumber processed in Canada," and that planing and sanding are mentioned in the *Orders*. Final Determination at 17. R&R failed to engage with the evidence and argument Coastal actually raised—that this processing must be substantially transformative thereby *removing* otherwise subject merchandise from the scope of the *Orders* when occurring in New Zealand

because the scope would have otherwise covered U.S.-origin lumber thus further processed in Canada.

## TIMELINESS AND JURISDICTION

46. Coastal timely summonsed this action and filed this complaint within 30 days of the Final Determination. 19 U.S.C. § 1517(g).

47. Coastal has standing as it is the importer of record that is the subject of the underlying EAPA investigation.

48. This Court has jurisdiction under 28 U.S.C. § 1581(c).

## COUNT I
### Customs Acted Outside its Lawful Authority by Deciding the *Orders*' Scope

49. Coastal restates the allegations in paragraph 1 through 48 as if fully set forth herein.

50. The Evasion Determination and Final Determination are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because, by failing to refer the question of the *Orders*' scope to Commerce and by construing the *Orders* to cover the merchandise at issue, Customs acted outside its lawful authority to only ministerially apply the *Orders*.

## COUNT II
### Customs Failed to Consider Record Evidence Demonstrating that the Finished Products that Coastal Imported were Substantially Transformed in New Zealand

51. Coastal restates the allegations in paragraph 1 through 50 as if fully set forth herein.

52. The Evasion Determination and Final Determination are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because Customs "entirely failed to consider an important aspect of the problem"—the undisputed record evidence demonstrating that the finished products that Coastal imported were substantially transformed in New Zealand, pursuant to both the plain language of the *Orders* and Commerce's substantial-transformation test, 19 C.F.R. § 351.225(j). *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372,

1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

**COUNT III**
**Alternatively, Even if Customs Can Interpret the *Orders*, it Erroneously Applied Them to the Finished Products Coastal Imported that were Substantially Transformed in New Zealand**

53. Coastal restates the allegations in paragraph 1 through 52 as if fully set forth herein.

54. In the alternative, the Evasion Determination and Final Determination are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because the *Orders*' scope does not cover the finished products that Coastal imported from Hermpac, which were substantially transformed through kiln-drying, planing, sanding, and more in New Zealand, pursuant to the plain language of the *Orders* and Commerce's substantial-transformation test, 19 C.F.R. § 351.225(j).

**PRAYER FOR RELIEF**

Coastal respectfully requests that this Court enter judgment for Coastal and against the United States; remand this matter to Customs for reconsideration in accordance with the Court's opinion; award Coastal its costs and attorneys' fees; and grant such other and further relief as this Court deems appropriate.

Dated: October 9, 2026

Respectfully submitted,

/s/ Sarah S. Sprinkle
Sarah S. Sprinkle
Luke Mathers
Alexander D. Keyser
**SANDLER, TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue NW
Suite 400
Washington, D.C. 20004
(202) 730-4969
ssprinkle@strtrade.com